# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ELISEO GARCIA,

    Plaintiff,

v.

DOUGLAS A. COLLINS, Secretary of the
United States Department of Veteran Affairs,

    Defendant.

Case No. 24 C 4154

Hon. LaShonda A. Hunt

## MEMORANDUM OPINION AND ORDER

Plaintiff Eliseo Garcia ("Garcia") sued his employer, the Department of Veterans Affairs, for failure to accommodate his disability in violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq*. Defendant Douglas A. Collins, in his capacity as Secretary of the United States Department of Veteran Affairs, ("Defendant" or "VA")[1] has moved for summary judgment. (Mot., Dkt. 25). For the reasons discussed below, the motion is granted.

## BACKGROUND[2]

Garcia is a disabled veteran who began working at the Hines VA Hospital ("Hines") in June 2019. (Pl.'s Resp. Def.'s Statement of Facts ¶ 1, Dkt. 35) (hereinafter, "PRSOF"). In 2020, he was promoted to a teller or agent cashier, a GS-06 position, which required him to stand in front of a glass window and process payments for veterans paying their medical bills, among other things. (PRSOF ¶¶ 1-2).

---

[1] Garcia originally sued Denis McDonough, the former Secretary of the VA. (*See* Compl., Dkt. 1). However, during the pendency of this suit, Douglas A. Collins replaced McDonough as Secretary; therefore, Collins "is automatically substituted as a party" pursuant to Fed. R. Civ. P. 25(d).

[2] The facts are taken from the parties' Local Rule 56.1 Statements and are undisputed, unless otherwise noted.

Hines is a 24/7 facility that employs 3,800 people and provides health care to more than 57,000 veterans annually. (*Id.* ¶ 26). There are approximately 3,490 parking spaces for visitors and employees across the campus, and around 2,895 are usually occupied by 8:15 a.m. on a workday. (*Id.* ¶¶ 31-32). Typically, when Garcia would report to work for his cashier duties at 8:00 a.m., the handicap spaces near his building were filled. (*Id.* ¶ 7). Garcia believes that Hines does not have enough handicap spaces to accommodate all disabled employees and patients. (*Id.* ¶ 8).

On February 6, 2023, Garcia submitted a request for a reasonable accommodation, supported by medical documentation indicating that he has "degenerative joint disease in bilateral knees" and that he "needs closer parking to work." (*Id.* ¶¶ 9-10). During the interactive process with the VA to determine an appropriate accommodation, Garcia indicated that a parking spot closer to his office would alleviate his symptoms as handicap spaces near his building entrance were normally full by the time he arrived for work. (*See id.* ¶ 11). Garcia also requested remote work as an alternate accommodation. (*Id.* ¶ 12).

On February 8, 2023, Garcia's supervisor, Brad J. Hagen, who served as the VA's deciding management official, approved Garcia's request for a parking accommodation. (*Id.* ¶ 13). The VA designated parking space #3767 for Garcia's sole use, and the VA's engineering and police departments were directed to install a parking sign at that space. (*Id.* ¶ 14).

However, Garcia did not accept the accommodation; instead, he sought reconsideration, because he wanted the closest handicap space to the entrance of his building. (*Id.* ¶ 16). The VA's Handbook 5975.1, Section 12, provides in relevant part that employees with mobility impairments have "priority over all other groups" for parking and that "[a]dditional handicapped (HC) spaces will have to be created if a facility does not have enough HC spaces for the number of employees with mobility impairments who requested parking as a RA." (*Id.* ¶ 17). The Handbook further

2

states that when an employee is granted a parking space as a reasonable accommodation, "that employee must be provided an assigned space with the shortest route to the workspace." (*Id.*).

On February 21, 2023, Chrystel Adenle, the Hines reasonable accommodation coordinator, and Minako Haywood-Taylor, the VA's reconsideration designated management official, held an interactive meeting with Garcia to address his request for reconsideration. (*Id.* ¶ 18). During that meeting, Adenle explained that the deciding management official had approved Garcia's parking request; Garcia nonetheless insisted that he wanted a handicap space consistent with the VA Handbook. (*Id.* ¶ 19). Adenle told him the VA Police would not allow a handicap space to be converted into a reasonable accommodation space because the facility must maintain a certain number of handicap spaces. (*Id.* ¶¶ 20-21). Thus, the reconsideration designated management official agreed with the original decision that space #3767 should be reserved for Garcia's sole use. (*Id.* ¶ 23). On March 9, 2023, Garcia received confirmation that a reserved sign had been installed at space #3767; however, he again rejected the space. (*Id.* ¶ 24). The stress of the parking accommodation process aggravated Garcia's anxiety and depression. (*Id.* ¶ 43).

Garcia also requested to telework full-time as a reasonable accommodation but that was denied because his essential job functions as a teller required him to interact throughout the day with people to disburse and receive cash and checks on-site. (*Id.* ¶ 44). Garcia stated that due to his conditions, he was unable to interact with the public, had trouble with concentration and focus, and had issues driving and commuting to work. (*Id.* ¶ 46). The VA offered Garcia an alternate accommodation of dividing his breaks into smaller increments and taking two additional 15-minute breaks but he did not believe the additional breaks were sufficient. (*Id.* ¶¶ 45, 47).

3

The VA then approved a reassignment job search as an accommodation of last resort and paired Garcia with an HR professional to assist with the search. (*Id.* ¶¶ 48-49). On June 14, 2023, Garcia was offered and accepted a fully remote position as a GS-06 voucher examiner. (*Id.* ¶ 50).

On May 12, 2023, Garcia had filed an EEO complaint alleging the VA failed to accommodate his disability by not providing him the closest handicap parking spot. (*Id.* ¶ 51). Garcia received notice of the final agency decision on February 26, 2024, and timely initiated this action alleging a single count of failure to accommodate. (*Id.* ¶ 52). Following discovery, Defendant now moves for summary judgment; the motion is fully briefed.

## LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, 990 F.3d 1003, 1008 (7th Cir. 2021). Summary judgment "requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

Garcia contends that Defendant did not accommodate his disability in an appropriate or timely manner. To prevail on a failure to accommodate claim, plaintiffs "must show that: (1) [they are] a qualified individual with a disability; (2) the employer was aware of [their] disability; and (3) the employer failed to reasonably accommodate the disability." *Schoper v. Bd. of Trs. of W. Ill.*

*Univ.*, 119 F.4th 527, 532 (7th Cir. 2024) (quotations and citation omitted). Upon notification by employees that they have a disability, "the ADA [and the Rehabilitation Act] obligate[] the employer to engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000) (quotations and citation omitted).[3] "This step imposes a duty upon employers to engage in a flexible, interactive process with the disabled employee needing accommodation so that, together, they might identify the employee's precise limitations and discuss accommodation which might enable the employee to continue working." *Id.* (quotations and citations omitted).

Defendant does not dispute that the first two elements are satisfied here. And Garcia does not argue that the remote position he accepted was not a reasonable accommodation. Rather, Garcia asserts, Defendant's four-month delay in providing that accommodation was unreasonable. (Opp'n, at 558-563, Dkt. 34).[4] Defendant counters that any delay is due to "a fully and properly executed interactive process required under the Rehabilitation Act that led to his current accommodation," and that "there is no evidence of bad faith on the VA's part," to establish the unreasonableness of the process. (Mem. Supp. Mot., at 635-636, Dkt. 26). Upon consideration of the record and the relevant case law, the Court agrees with Defendant.

"An unreasonable delay in providing an accommodation for an employee's known disability can amount to a failure to accommodate his disability that violates the Rehabilitation Act." *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020) (citing *Jay v. Intermet Wagner*, 233

---

[3] The Court's analysis of failure to accommodate claims under the Rehabilitation Act and the ADA is the same. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("[T]he analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds . . . ."); *Wisconsin Comm. Svcs., Inc. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006) ("The Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, applies to federal government agencies as well as organizations that receive federal funds.").

[4] Page numbers in citations refer to the "PageID" in the CM/ECF header, not "Page __ of __" in the CM/ECF header or any page number appearing in the footer.

F.3d 1014, 1017 (7th Cir. 2000)). Whether an employer's delay qualifies as unreasonable "turns on the totality of the circumstances, including, . . . such factors as the employer's good faith [attempt] to accommodate the disability, the length of the delay, the reasons for the delay, the nature, complexity, and burden of the accommodation requested, and whether the employer offered alternative accommodations." *Id.* Further, courts have found even months-long delays were reasonable where the employer "clearly participate[d] in the interactive process in good faith," *Monroe v. Jewel Food Stores, Inc.*, No. 18 CV 1499, 2021 WL 534662, at *4 (N.D. Ill. Feb. 12, 2021), or there was no indication of bad faith. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178-1179 (7th Cir. 2013) (5-month delay not unreasonable where employer-provided interim accommodations were deemed "insufficient" but only in retrospect), overruled on other grounds by *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016); *but see Johnson v. Brennan*, No. 17 CV 8878, 2020 WL 1139253, at *7 (N.D. Ill. March 9, 2020) (5-month delay in accommodation was unreasonable where the employer "completely ignored multiple requests for accommodation" and failed to explain its delay).

For example, in *Jay*, the Seventh Circuit found that a 20-month delay in accommodating an employee's disability by reassigning him to a new position did not constitute a failure to accommodate where the employer "acted reasonably and in good faith." *Jay*, 233 F.3d at 1017. There, the employee contended that the accommodation the employer selected—reassignment to a new job—was unreasonable due to the 20-month delay before the position became available. *Id.* The Seventh Circuit affirmed the district court's grant of summary judgment in favor of the employer because the employer acted reasonably and in good faith, by considering reassignment of the employee to open positions on a weekly basis, leaving him on medical layoff until he was reinstated, and placing him in a position that fit his qualifications and restrictions as soon as it

became available. *Id.* Similarly, in *Cloe*, a five-month delay was not unreasonable where the defendant provided several interim accommodations that turned out to be "insufficient." *Cloe*, 712 F.3d at 1177-1179. And although the defendant in *Cloe* provided no accommodation during the first three months of the period of delay, there was no indication that the defendant was acting in bad faith. *See id.* at 1177-1179. In contrast, in *Johnson*, the district court found that an employer's five-month delay was unreasonable where it "completely ignored multiple requests for an accommodation" during that period. 2020 WL 1139253, at *7.

The instant case is more like *Jay* and *Cloe* than *Johnson*. Garcia suffered from a bilateral degenerative joint disease in his knees, and thus requested a parking space close to his work building since the handicap spaces outside the building were usually taken by the time he reported to work. In support, he included medical documentation from his healthcare provider affirming the need for closer parking due to his disease. During the interactive screening process, Garcia confirmed to the VA that he wanted a closer parking spot to alleviate his symptoms. Alternatively, he requested remote work.

Two days later, the VA approved his requested accommodation, and designated a parking space solely for his use. But Garcia thought he should have the closest handicap parking space to the entrance of his work building, and thus requested reconsideration. Within weeks, the VA held another interactive meeting with Garcia, and informed him that converting a handicap parking space into a reserved space for him would put the facility in a position where it failed to maintain a certain number of handicap parking spaces. Garcia disagreed with that position. Even so, within a matter of weeks, the VA installed the reserved sign on Garcia's designated parking space, but he rejected that accommodation.

The VA then offered Garcia an alternate option of dividing his breaks into smaller increments along with two additional 15-minute breaks. Garcia deemed that insufficient, and stated that due to his anxiety and depression he was unable to interact with the public as the cashier position required, let alone focus, concentrate, and commute to work. Due in part to the mental health difficulties interfering with his ability to perform essential job functions as an agent cashier, the VA approved Garcia's request for reassignment about six weeks later. Garcia was then paired with an HR professional and less, than two months later, offered and accepted a fully remote position at the same GS-06 grade as his cashier position.

Based on the undisputed facts in the record, this is not a situation where the employer completely ignored multiple requests for accommodation like in *Johnson*. Here, the VA promptly responded to Garcia's request for accommodation within days, and on multiple occasions, engaged in an interactive process with him to determine a suitable accommodation. In fact, Garcia received his alternate accommodation of a fully remote job at the same grade. Like in *Cloe*, the four-month delay here was not unreasonable merely because Defendant's interim accommodations did not satisfy Garcia. Furthermore, like *Jay*, there is no indication that Defendant acted in bad faith. Indeed, the evidence here shows that the VA engaged with Garcia in an interactive process and placed him in a position that fit his qualifications and restrictions as soon as it became available. Therefore, the Court finds that no triable issues of material fact for a jury to resolve and Defendant is entitled to summary judgment because the four-month delay in finding an accommodation for Garcia was not unreasonable.

Finally, Garcia insists that the accommodation offered to him *before* he accepted the remote position was insufficient. (Opp'n, at 558-563). In other words, he contends that because the parking space was not close enough for his liking, the accommodation was "ineffective" and

8

thus the VA is liable. (*See id.* at 559).[5] However, an employee is not entitled to their "preferred accommodation or the accommodation most beneficial to the employee." *Porter v. City of Chi.*, 700 F.3d 944, 951 (7th Cir. 2012) (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986)). Because the undisputed facts reflect that Defendant offered Garcia a reasonable accommodation, which he accepted, "[t]hat is the end of [the] inquiry." *Brooks v. City of Pekin*, 95 F.4th 533, 538 (7th Cir. 2024) (quoting *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 682 (7th Cir. 2014)). It is therefore "irrelevant" that Defendant "fail[ed] to provide the exact accommodation [Plaintiff] would have preferred." *Id.* (quoting *Bunn*, 753 F.3d at 682).

## CONCLUSION

For all the foregoing reasons, summary judgment is granted in favor of Defendant and against Plaintiff.

**DATED**: March 2, 2026                    **ENTERED**:

LaSHONDA A. HUNT
United States District Judge

---

[5] Plaintiff also acknowledges in his brief that his acceptance of the remote position "render[ed] the parking issue moot." (Opp'n, at 556).

9